## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: Ralph Godwin, Jr.     )     CHAPTER 13
                  )
                  )
                  )
     Debtor.           )     CASE # 15-30116-KKS

## MOTION FOR ORDER AUTHORIZING
## DEBTOR TO SELL PROPERTY

COMES NOW the Debtor, by and through his attorney of record, and moves this Honorable Court for an order authorizing his to sell property and in support thereof states as follows:

1. This Chapter 13 Case was filed on February 4, 2015.

2. The Debtor have entered into a Contract for Sale for property he inherited, located at 5469 Rowe Trail, Milton, FL 32571. Attached hereto as Exhibit A and incorporated herein by reference is a copy of said contract and proposed Settlement Statement.

3. Debtor propose to sell the property for approximately $280,880.00. Closing of the sale to take place as soon as reasonably possible. Debtor shall receive approximately 25% of the net proceeds as his portion of the inheritance.

4.    The Debtor proposes to pay his portion of the net

proceeds, if any, from the sale of the real property into the

Chapter 13 Case for the benefit of his creditors.

Proceeds shall be paid after satisfaction of the mortgage

and closing costs.

WHEREFORE PREMISES CONSIDERED, Debtor prays that

this Honorable Court enter an Order allowing the debtor to sell the

home and lot located at 5469 Rowe Trail, Milton, FL 32571, for such

other, further, and different relief as may be appropriate under the

circumstances.

Steven D. Jurnovoy FL Bar No. 938221
Martin S. Lewis FL Bar No. 0100587
Attorney For Debtor

**OF COUNSEL:**
Lewis & Jurnovoy, P.A.
1100 North Palafox Street
Pensacola, FL 32501
Telephone (850) 432-9110
Facsimile (850) 433-8794
Email: landj@4-debtor.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing Motion for Order Authorizing Debtor to Sell Property has been submitted to those listed below by electronic email or to All Parties Contained on the Attached Mailing Matrix by first class mail, postage prepaid on this the _____ day of August 2018.

OF COUNSEL

Leigh D. Hart
ldhdock@earthlink.net

Ralph Godwin, Jr.
2920 Stefani Road
Cantonment, FL  32533

Locklin, Saba, Locklin & Jones, PA
Attn: Angela J. Jones, Esq.
4557 Chumuckla Highway
Pace, FL 32571

First American Title Insurance Company
Attn: Joe Teichert
3563 Phillips Highway
Building E, Suite 504
Jacksonville, FL 32207

dotloop signature verification: www.dotloop.com/my/verification/DL-360178305-5-M102

dotloop signature verification: www.dotloop.com/my/verification/DL-358381511-5-8415

## Counter Offer #1 _____

**Florida**Realtors®

Ralph L. Godwin, Jr, Trustee of the Barbara F. Godwin Living Trust dated September 28, 2007 _____ ("Seller")

and Cliff Noel Thacker and Michelle Boivin Thacker, Husband and Wife _____ ("Buyer")

agree that the initial offer, executed by the party making the offer and dated _____ , for the sale and
purchase of the real property described as follows:

5469 Rowe Trail, Milton, FL 32571

as amended only by this counter offer, executed by all parties, is accepted and shall constitute the full and entire contract.
**This counter offer does not include terms and conditions of any other counter offer unless restated herein.** All
terms and conditions of the initial offer remain the same except the following:

☑ Purchase Price is changed to $ 280,000.00   277,500.00  _MBT 6/20/18_  with no contingencies of buyer selling their current home

☐ Closing Date is changed to _____

☐ The following items are included in the purchase:

☐ The following items are excluded from the purchase:

**Other**

| Line Number | Counter Offer Term |
|---|---|
| Line 41 | Balance to close is $55,000- 54,500  MBT 6/20/18 |
| Lines 134 | Buyer to order and pay for survey and elevation certificate if needed.  MBT 6/20/18 |
| Line 135-142 | Seller to pay zero in repairs. Home is being sold as-is, where-is with no warranties. MBT 6/20/18 |

If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before 06/18/2018
(within 2 days after the counter offer is delivered if left blank), this counter offer shall be deemed withdrawn and the
deposit(s), if any, shall be returned to Buyer. **This is intended to be a legally binding contract.**

Buyer: _____  Date: 6/20/18 1:00 pm

Buyer: _Michelle B Thacker_  Date: 6/20/18 12:16 p

Seller: _Ralph L Godwin Jr_  Date: _____

Seller: _____  Date: _____

CO-3    Rev 1/16

Licensed to dotloop, Inc. and Paula McGuire

© 2015 Florida Association of Realtors®

Exhibit A

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

MBT 6/24/18

RLG
06/17/18
4:46PM CST

# Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**     ◆ FloridaRealtors

1\*  PARTIES: Ralph L. Godwin, Jr, Trustee of the Barbara F. Godwin Living Trust dated 9/28/07 _____ ("Seller"),
2\*  and _Clift Noel Thacker and Michelle Boivin Thacker, h+w_ ("Buyer"),
3   agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4   (collectively "Property") pursuant to the terms and conditions of this Residential Contract For Sale And Purchase and
5   any riders and addenda ("Contract"):
6   1. PROPERTY DESCRIPTION:
7\*     (a) Street address, city, zip: _5469 Rowe Trail, Pace Fl 32571_
8\*     (b) Located in: _Santa Rosa_ County, Florida. Property Tax ID #: _06 1N 29 5804 00B00 0630_
9\*     (c) Real Property: The legal description is _Woodbine Springs Plantation Lot 63_
10       _Block B AS DES IN OR 789 PG 66 + REV ENHNCD LIFE_
11       _EST IN OR 2774 PG 2092 LESS 2/3 MIN RIGHTS_
12       together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13       attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14       by other terms of this Contract.
15     (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16       which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17       purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18       drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19       and other access devices, and storm shutters/panels ("Personal Property").
20\*     Other Personal Property items included in this purchase are:_____
21
22       Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.  1/24/18
23\*    (e) The following items are excluded from the purchase:_____    MBT
24

25                               **PURCHASE PRICE AND CLOSING**        See Counter     RLG 06/17/18

26\*  2. PURCHASE PRICE (U.S. currency):...............................................................$ _367,000._ 00
27\*     (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) .......$ _1,000._ 00
28       The initial deposit made payable and delivered to "Escrow Agent" named below
29\*       (CHECK ONE): (i) ☐ accompanies offer or (ii) ☑ is to be made within _____ (if left
30       blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31       OPTION (ii) SHALL BE DEEMED SELECTED.
32\*      Escrow Agent Information: Name _Locklin, Saba, Locklin Jones / Amy Blackmon_
33\*      Address: _4557 Chumuckla Hwy, Pace, Fl 32571_
34\*   850-Phone:_6961270_ E-mail:_closeamy@islawfirm.com_
35\*     (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36\*       days after Effective Date ..........................................................................$_____
37       (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38\*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 .......$ _80%_
39\*     (d) Other:..........................................................................................$_____
40     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41       transfer or other COLLECTED funds ..........................................................$ 52,400. 00
42       NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.     RLG MBT 6/24/18
43   3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:
44     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45\*       _6/16/18 5pm_, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned
46       to Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47       the counter-offer is delivered.
48     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49       initialed and delivered this offer or final counter-offer ("Effective Date").
50   4. CLOSING DATE: Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51\*     and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52\*     ("Closing") on _7/31/2018_ _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials ___ ___                     Page 1 of 13               Seller's Initials ___ RLG 06/17/18 4:46PM CST
FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 066017-600152-0203516

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

**5. EXTENSION OF CLOSING DATE:**
   (a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.
   (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**
   (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy, except with respect to any items identified by Buyer pursuant to Paragraph 12, prior to taking occupancy, which require repair, replacement, treatment or remedy.
   (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Buyer after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

**FINANCING**

**8. FINANCING:**
   ☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.
   ☒ (b) This Contract is contingent upon Buyer obtaining approval of a ☒ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☒ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").
       (i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

       (ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.
       (iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.



dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

106 (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to
107 expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been
108 unable to obtain Loan Approval and has elected to either:
109 (1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
110 (2) terminate this Contract.
111 (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
112 expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
113 will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
114 by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.
115 (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
116 default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
117 from all further obligations under this Contract.
118 (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
119 fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
120 default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
121 have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
122 of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
123 Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
124 Contract.
125* ☐ (c) Assumption of existing mortgage (see rider for terms).
126* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

127
128 **CLOSING COSTS, FEES AND CHARGES**

129 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
130 **(a) COSTS TO BE PAID BY SELLER:**
131 • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
132 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)   • Recording and other fees needed to cure title
133 • Title search charges (if Paragraph 9(c)(iii) is checked)   • Seller's attorneys' fees *if required*
134* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)   • Other: *New Survey & elevation cert.*
135 Seller shall pay the following amounts/percentages of the Purchase Price for the following costs and expenses:
136* (i) up to $ *300.00* or _____ % (1.5% if left blank) for General Repair Items ("General Repair
137 Limit"); and
138* (ii) up to $ *2,000.00* or _____ % (1.5% if left blank) for WDO treatment and repairs ("WDO Repair
139 Limit"); and
140* (iii) up to $ _____ or _____ % (1.5% if left blank) for costs associated with closing out open or
141 expired building permits and obtaining required building permits for any existing improvement for which a
142 permit was not obtained ("Permit Limit").
143 If, prior to Closing, Seller is unable to meet the Maintenance Requirement as required by Paragraph 11 or the
144 repairs, replacements, treatments or permitting as required by Paragraph 12 then, sums equal to 125% of the
145 estimated costs to complete the applicable item(s) (but not in excess of applicable General Repair, WDO
146 Repair, and Permit Limits set forth above, if any) shall be escrowed at Closing. If actual costs of required repairs,
147 replacements, treatment or permitting exceed applicable escrowed amounts, Seller shall pay such actual costs
148 (but not in excess of applicable General Repair, WDO Repair, and Permit Limits set forth above). Any unused
149 portion of escrowed amount(s) shall be returned to Seller.
150 **(b) COSTS TO BE PAID BY BUYER:**
151 • Taxes and recording fees on notes and mortgages   • Loan expenses
152 • Recording fees for deed and financing statements   • Appraisal fees
153 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)   • Buyer's Inspections
154 • Survey (and elevation certification, if required)   • Buyer's attorneys' fees
155 • Lender's title policy and endorsements   • All property related insurance
156 • HOA/Condominium Association application/transfer fees   • Owner's Policy Premium (if Paragraph
157 • Municipal lien search (if Paragraph 9(c)(ii) is checked)    9 (c)(iii) is checked.)
158* • Other:
159* **(c) TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
160 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
161 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
162 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be

Buyer's Initials _____ x *NPS*    Page 3 of 13    Seller's Initials _____ *RLG*

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

163 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
164 copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
165 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
166 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
167 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
168 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a
169 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
170 liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
171 **(CHECK ONE):**
172 * ☑ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
173 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
174 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
175 provider(s) as Buyer may select; or
176 * ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
177 services related to Buyer's lender's policy, endorsements and loan closing; or
178 * ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy
179 of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
180 which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
181 municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
182 * policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
183 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.
184 (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
185 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
186 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
187 * (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☑ N/A shall pay for a home warranty plan issued by
188 * _____ at a cost not to exceed $_____. A home
189 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
190 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
191 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
192 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
193 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
194 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
195 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
196 be paid in installments **(CHECK ONE):**
197 * ☑ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
198 Installments prepaid or due for the year of Closing shall be prorated.
199 * ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
200 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
201 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
202 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

203                                        **DISCLOSURES**

204 **10. DISCLOSURES:**
205 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208 radon and radon testing may be obtained from your county health department.
209 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210 does not know of any improvements made to the Property which were made without required permits or made
211 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
212 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
213 written documentation or other information in Seller's possession, knowledge, or control relating to
214 improvements to the Property which are the subject of such open permits or unpermitted improvements.
215 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
216 desires additional information regarding mold, Buyer should contact an appropriate professional.
217 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
218 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

219 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
220 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
221 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
222 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
223 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
224 * may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
225 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
226 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
227 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
228 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
229 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
230 rating.
231 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
232 required by Section 553.996, F.S.
233 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
234 mandatory.
235 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
236 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
237 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**
238 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
239 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
240 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
241 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
242 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
243 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
244 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
245 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
246 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
247 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
248 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
249 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
250 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
251 FIRPTA.
252 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
253 not readily observable and which have not been disclosed to Buyer. Except as otherwise disclosed in writing
254 Seller has received no written or verbal notice from any governmental entity or agency as to a currently
255 uncorrected building, environmental or safety code violation.

256                      **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 11. **PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, and those repairs,
258 replacements or treatments required to be made by this Contract, Seller shall maintain the Property, including, but
259 not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("Maintenance Requirement").
260 12. **PROPERTY INSPECTION AND REPAIR:**
261 * (a) **INSPECTION PERIOD:** Buyer shall have _____ (if left blank, then 15) days after Effective Date ("Inspection
262 Period"), within which Buyer may, at Buyer's expense, conduct "General", "WDO", and "Permit" inspections
263 described below. If Buyer fails to timely deliver to Seller a written notice or report required by (b), (c), or (d)
264 below, then, except for Seller's continuing Maintenance Requirement, Buyer shall have waived Seller's
265 obligation(s) to repair, replace, treat or remedy the matters not inspected and timely reported. If this Contract
266 does not close, Buyer shall repair all damage to Property resulting from Buyer's inspections, return Property to
267 its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its
268 completion.
269 (b) **GENERAL PROPERTY INSPECTION AND REPAIR:**
270 **(i) General Inspection:** Those items specified in Paragraph 12(b) (ii) below, which Seller is obligated to repair
271 or replace ("General Repair Items") may be inspected ("General Inspection") by a person who specializes in
272 and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida
273 license to repair and maintain the items inspected ("Professional Inspector"). Buyer shall, within the Inspection
274 Period, inform Seller of any General Repair Items that are not in the condition required by (b)(ii) below by

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

275 delivering to Seller a written notice and upon written request by Seller a copy of the portion of Professional
276 Inspector's written report dealing with such items.
277 (ii) **Property Condition:** The following items shall be free of leaks, water damage or structural damage: ceiling,
278 roof (including fascia and soffits), exterior and interior walls, doors, windows, and foundation. The above items
279 together with pool, pool equipment, non-leased major appliances, heating, cooling, mechanical, electrical,
280 security, sprinkler, septic and plumbing systems and machinery, seawalls, and dockage, are, and shall be
281 maintained until Closing, in "Working Condition" (defined below). Torn screens (including pool and patio
282 screens), fogged windows, and missing roof tiles or shingles shall be repaired or replaced by Seller prior to
283 Closing. Seller is not required to repair or replace "Cosmetic Conditions" (defined below), unless the Cosmetic
284 Conditions resulted from a defect in an item Seller is obligated to repair or replace. "Working Condition" means
285 operating in the manner in which the item was designed to operate. "Cosmetic Conditions" means aesthetic
286 imperfections that do not affect Working Condition of the item, including, but not limited to: pitted marcite; tears,
287 worn spots and discoloration of floor coverings, wallpapers, or window treatments; nail holes, scrapes,
288 scratches, dents, chips or caulking in ceilings, walls, flooring, tile, fixtures, or mirrors; and minor cracks in walls,
289 floor tiles, windows, driveways, sidewalks, pool decks, and garage and patio floors. Cracked roof tiles, curling
290 or worn shingles, or limited roof life shall not be considered defects Seller must repair or replace, so long as
291 there is no evidence of actual leaks, leakage or structural damage.
292 (iii) **General Property Repairs:** Seller is only obligated to make such general repairs as are necessary to bring
293 items into the condition specified in Paragraph 12(b) (ii) above. Seller shall within 10 days after receipt of Buyer's
294 written notice or General Inspection report, either have the reported repairs to General Repair Items estimated
295 by an appropriately licensed person and a copy delivered to Buyer, or have a second inspection made by a
296 Professional Inspector and provide a copy of such report and estimates of repairs to Buyer. If Buyer's and
297 Seller's inspection reports differ and the parties cannot resolve the differences, Buyer and Seller together shall
298 choose, and equally split the cost of, a third Professional Inspector, whose written report shall be binding on
299 the parties.
300 If cost to repair General Repair Items equals or is less than the General Repair Limit, Seller shall have repairs
301 made in accordance with Paragraph 12(f). If cost to repair General Repair Items exceeds the General Repair
302 Limit, then within 5 days after a party's receipt of the last estimate: (A) Seller may elect to pay the excess by
303 delivering written notice to Buyer, or (B) Buyer may deliver written notice to Seller designating which repairs of
304 General Repair Items Seller shall make (at a total cost to Seller not exceeding the General Repair Limit) and
305 agreeing to accept the balance of General Repair Items in their "as is" condition, subject to Seller's continuing
306 Maintenance Requirement. If neither party delivers such written notice to the other, then either party may
307 terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all
308 further obligations under this Contract.
309 (c) **WOOD DESTROYING ORGANISM ("WDO") INSPECTION AND REPAIR:**
310 (i) **WDO Inspection:** The Property may be inspected by a Florida-licensed pest control business ("WDO
311 Inspector") to determine the existence of past or present WDO infestation and damage caused by infestation
312 ("WDO Inspection"). Buyer shall, within the Inspection Period, deliver a copy of the WDO Inspector's written
313 report to Seller if any evidence of WDO infestation or damage is found. "Wood Destroying Organism" ("WDO")
314 means arthropod or plant life, including termites, powder-post beetles, oldhouse borers and wood-decaying
315 fungi, that damages or infests seasoned wood in a structure, excluding fences.
316 (ii) **WDO Repairs:** If Seller previously treated the Property for the type of WDO found by Buyer's WDO
317 Inspection, Seller does not have to retreat the Property if there is no visible live infestation, and Seller, at Seller's
318 cost, transfers to Buyer at Closing a current full treatment warranty for the type of WDO found. Seller shall within
319 10 days after receipt of Buyer's WDO Inspector's report, have reported WDO damage estimated by an
320 appropriately licensed person, necessary corrective treatment, if any, estimated by a WDO Inspector, and a
321 copy delivered to Buyer. Seller shall have treatments and repairs made in accordance with Paragraph 12(f)
322 below up to the WDO Repair Limit. If cost to treat and repair the WDO infestations and damage to Property
323 exceeds the WDO Repair Limit, then within 5 days after receipt of Seller's estimate, Buyer may deliver written
324 notice to Seller agreeing to pay the excess, or designating which WDO repairs Seller shall make (at a total cost
325 to Seller not exceeding the WDO Repair Limit), and accepting the balance of the Property in its "as is" condition
326 with regard to WDO infestation and damage, subject to Seller's continuing Maintenance Requirement. If Buyer
327 does not deliver such written notice to Seller, then either party may terminate this Contract by written notice to
328 the other, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further
329 obligations under this Contract.

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O7G

(d) **INSPECTION AND CLOSE-OUT OF BUILDING PERMITS:**
(i) **Permit Inspection:** Buyer may have an inspection and examination of records and documents made to determine whether there exist any open or expired building permits or unpermitted improvements to the Property ("Permit Inspection"). Buyer shall, within the Inspection Period, deliver written notice to Seller of the existence of any open or expired building permits or unpermitted improvements to the Property. If Buyer's inspection of the Property identifies permits which have not been properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.
(ii) **Close-Out of Building Permits:** Seller shall, within 10 days after receipt of Buyer's Permit Inspection notice, have an estimate of costs to remedy Permit Inspection items prepared by an appropriately licensed person and a copy delivered to Buyer. No later than 5 days prior to Closing Date, Seller shall, up to the Permit Limit, have open and expired building permits identified by Buyer or known to Seller closed by the applicable governmental entity, and obtain and close any required building permits for improvements to the Property. Prior to Closing Date, Seller will provide Buyer with any written documentation that all open and expired building permits identified by Buyer or known to Seller have been closed out and that Seller has obtained and closed required building permits for improvements to the Property. If final permit inspections cannot be performed due to delays by the governmental entity, Closing Date shall be extended for up to 10 days to complete such final inspections, failing which, either party may terminate this Contract, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.
If cost to close open or expired building permits or to remedy any permit violation of any governmental entity exceeds Permit Limit, then within 5 days after a party's receipt of estimates of cost to remedy: (A) Seller may elect to pay the excess by delivering written notice to Buyer; or (B) Buyer may deliver written notice to Seller accepting the Property in its "as is" condition with regard to building permit status and agreeing to receive credit from Seller at Closing in the amount of Permit Limit. If neither party delivers such written notice to the other, then either party may terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.
(e) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the Maintenance Requirement, has made repairs and replacements required by this Contract, and has met all other contractual obligations.
(f) **REPAIR STANDARDS; ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** All repairs and replacements shall be completed in a good and workmanlike manner by an appropriately licensed person, in accordance with all requirements of law, and shall consist of materials or items of quality, value, capacity and performance comparable to, or better than, that existing as of the Effective Date. Except as provided in Paragraph 12(c)(ii), at Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

**ESCROW AGENT AND BROKER**

13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida, and subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.
In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

386 attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
387 shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
388 Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
389 termination of this Contract.

390 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
391 square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
392 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
393 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
394 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
395 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
396 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
397 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
398 **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
399 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
400 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
401 all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
402 or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
403 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
404 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
405 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
406 recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
407 provided by any such vendor, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
408 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
409 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
410 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
411 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

412 **DEFAULT AND DISPUTE RESOLUTION**
413 **15. DEFAULT:**
414 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
415 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
416 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
417 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
418 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
419 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
420 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
421 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
422 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
423 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
424 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
425 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
426 performance.
427 This Paragraph 15 shall survive Closing or termination of this Contract.
428 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
429 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
430 as follows:
431 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
432 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
433 16(b).
434 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
435 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
436 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
437 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
438 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
439 16 shall survive Closing or termination of this Contract.
440 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
441 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
442 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

443 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
444 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

445 **18. STANDARDS:**
446    **A. TITLE:**
447    **(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
448 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
449 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
450 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
451 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
452 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
453 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
454 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
455 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
456 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
457 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
458 addendum); provided, that, unless waived by Paragraph 12 (a), there exists at Closing no violation of the foregoing
459 and none prevent use of the Property for **RESIDENTIAL PURPOSES.** If there exists at Closing any violation of
460 items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be determined
461 according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.
462    **(ii) TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
463 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
464 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
465 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
466 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
467 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
468 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
469 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
470 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,
471 deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
472 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
473 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
474 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
475 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
476 further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
477 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
478 thereby releasing Buyer and Seller from all further obligations under this Contract.
479    **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
480 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
481 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
482 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
483 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
484 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
485 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
486 preparation of such prior survey, to the extent the affirmations therein are true and correct.
487    **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
488 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
489    **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
490 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
491 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s),
492 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit,
493 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
494 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
495 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
496 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

497 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
498 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
499 thereunder.

500 **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
501 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
502 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
503 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
504 general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
505 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
506 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
507 paid or will be paid at Closing.

508 **F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
509 than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
510 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
511 on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
512 is located) of the next business day.

513 **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
514 liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
515 services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
516 Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
517 unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
518 effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
519 Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
520 performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
521 this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
522 written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
523 further obligations under this Contract.

524 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
525 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
526 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
527 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
528 Contract.

529 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
530 **(i) LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
531 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
532 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
533 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
534 means.

535 **(ii) CLOSING DOCUMENTS:** Seller shall, at or prior to Closing, execute and deliver, as applicable, deed, bill of
536 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
537 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
538 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
539 the survey, flood elevation certification, and documents required by Buyer's lender.

540 **(iii) FinCEN GTO NOTICE.** If Closing Agent is required to comply with the **U.S. Treasury Department's**
541 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
542 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
543 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
544 **report of said information to IRS.**

545 **(iv) PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
546 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
547 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
548 **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

549 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
550 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
551 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
552 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
553 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from

Buyer's Initials _____ , _____     Page 10 of 13     Seller's Initials _____ _____
FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 066017-600152-0293518

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

date of receipt of such notification to cure the defect; (3) If Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) If Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

Buyer's Initials A _____ x MAS          Page 11 of 13          Seller's Initials _____ _____

FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 066017-500152-0203516

dotloop signature verification: www.dotloop.com/my/verification/DL-358768138-8-1O2G

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

609 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
610 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
611 rights.

612 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
613 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

614 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED"** means any checks tendered or
615 received, including Deposits, have become actually and finally collected and deposited in the account of
616 Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents
617 may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

618 **T. RESERVED.**

619 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
620 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
621 county where the Real Property is located.

622 **V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
623 Section 1445 of the Internal Revenue Code "Code") requires the buyer of the real property to withhold up to 15%
624 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
625 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
626 from the IRS authorizing a reduced amount of withholding.

627 (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
628 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
629 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
630 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
631 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
632 to the IRS.

633 (ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
634 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
635 reduced sum required, if any, and timely remit said funds to the IRS.

636 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
637 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
638 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
639 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
640 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
641 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
642 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

643 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
644 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
645 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
646 disbursement in accordance with the final determination of the IRS, as applicable.

647 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
648 8288 and 8288-A, as filed.

## ADDENDA AND ADDITIONAL TERMS

649* **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
650 Contract **(Check if applicable):**

| | | | |
|---|---|---|---|
| ☐ A. Condominium Rider | ☐ K. "As Is" | | ☐ T. Pre-Closing Occupancy |
| ☑ B. Homeowners' Assn. | ☐ L. Right to Inspect/ Cancel | | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control | | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing | | Line | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☐ P. Lead Paint Disclosure (Pre-1978) | | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners'/Flood Ins | ☐ Q. Housing for Older Persons | | ☐ AA. Licensee Property Interest |
| ☐ I. RESERVED | ☐ R. Rezoning | | ☐ BB. Binding Arbitration |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | | ☐ Other: _Buyer    Seller_ |
| | | | _Acknowledgement_ |
| | | | _Statement_ |

Buyer's Initials _____    Page 12 of 13    Seller's Initials _____

FloridaRealtors/FloridaBar- 5    Rev.4/17 © 2017 Florida Realtors³ and The Florida Bar. All rights reserved.

Serial: 056017-600152-0203516

dotloop signature verification: www.dotloop.com/my/verification/DL-358762138-8-1O2G

651* **20. ADDITIONAL TERMS:** _____

652 _____
653 *Yard building is as is,*
654 _____
655 *Central Vacuum is as is.*
656 _____
657 *Contingent upon a home inspection*
658 _____
659 *satisfactory to the buyer.*
660 _____
661 *Seller to complete/correct their*
662 _____
663 *property disclosures as noted.*
664 _____
665 _____
666 _____
667 _____

668 RLY | MBT 6/21/18 | **COUNTER-OFFER/REJECTION**

689* ☑ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
670 deliver a copy of the acceptance to Seller).
671* ☐ Seller rejects Buyer's offer.

672 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE**
673 **OF AN ATTORNEY PRIOR TO SIGNING.**

674 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

675 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
676 *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
677 *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

678 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
679 BE COMPLETED.

680* Buyer: _____ Date: 6/15/18
681* Buyer: _Michelle Thacker_ Date: 6/15/18
682* Seller: _____ Date: _____
683* Seller: _____ Date: _____

684 Buyer's address for purposes of notice          Seller's address for purposes of notice
685* 4804 Jaimee Leigh Dr.          _____
686* Milton, Fl 32570          _____
687* 704-608.19.81 (c)          _____
   mlboiving@yahoo.com
   michelle.c.thacker@me

688 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
689 to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to
690 disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties
691 and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the
692 escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker
693 to Cooperating Brokers.

694* _Patricia Worthem_          _Paula McGuire_
695 Cooperating Sales Associate, if any          Listing Sales Associate
696* _ERA Legacy_          _Re Max Infinity_
697 Cooperating Broker, if any          Listing Broker

Buyer's Initials x ___ x MBT          Page 13 of 13          Seller's Initials RLY
FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors¹ and The Florida Bar. All rights reserved.

Serial#: 056017-600162-0203516

| American Land Title Association | Estimated ALTA Settlement Statement - Combined |
|---|---|
| | Adopted 05-01-2015 |

**Locklin, Saba, Locklin & Jones, PA**
4557 Chumuckla Highway
Pace, FL 32571
Phone: (850) 995-1102 / Fax: (850) 995-1103

File No./Escrow No.:    18-372
Print Date & Time:    07/27/2018  11:21 AM
Officer/Escrow Officer:    Amy Blackman
Settlement Location:    4557 Chumuckla Hwy, Pace, FL 32571

Property Address:  5469 Rowe Trl, Milton, FL 32571
Buyer: Cliff Noel  Thacker and Michelle Boivin  Thacker
    4804 Jaimee Leigh Dr., Milton, FL 32570

Seller:  the Barbara F. Godwin Trust dated Septemnt 28, 2007
Lender: Quicken Loans, Inc
    Reference/Loan No: 3408979761

Settlement Date:    07/31/2018
Closing (Consummation) Date:    07/31/2018
Disbursement Date:    07/31/2018

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Financial** | | |
| | 277,500.00 | Sales Price of Property | 277,500.00 | |
| | | Deposit held by: LSLI/Thacker | | 1,000.00 |
| | | Loan Amount - Quicken Loans, Inc | | 222,000.00 |
| | | | | |
| | | **Prorations/Adjustments** | | |

Copyright 2015 American Land Title Association.
All rights reserved.    Page   1 of 4    Printed on 07/27/2018 at   11:21 AM

18-372

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| 1,633.08 | | Property Tax @ 2,825.00 per 1 year(s) 1/01/2018 to 7/31/2018 | | 1,633.08 |
| | 126.57 | Association Dues @ 350.00 per 1 year(s) 7/31/2018 to 12/31/2018 | 126.57 | |
| 1,160.00 | | adjust for florida owners policy prem. | | 1,160.00 |
| | | | | |
| | | Loan Charges to Quicken Loans, Inc | | |
| 555.00 | | Lock Rate Extension: Quicken Loans, Inc | | |
| | | | | |
| | | Title Charges & Escrow/Settlement Charges | | |
| 375.00 | | Settlement Agent Fee: Locklin, Saba, Locklin & Jones, PA | | |
| 302.50 | | Owner's Premium for 277,500.00: Locklin, Saba, Locklin & Jones, PA | | |
| | | Endorsement FF-9: Locklin, Saba, Locklin & Jones, PA | 148.75 | |
| | | Endorsement 8.1 for 222,000.00: Locklin, Saba, Locklin & Jones, PA | 25.00 | |
| | | Endorsement- PUD for 277,500.00: Locklin, Saba, Locklin & Jones, PA | 25.00 | |
| | | Lender/Mortgagee Premium for 222,000.00: Locklin, Saba, Locklin & Jones, PA | 1,185.00 | |
| 500.00 | | Attorney Fees: Locklin, Saba, Locklin & Jones, PA | | |
| | | To Locklin, Saba, Locklin & Jones   $1,180.37 ; To First American Title Insurance   $505.88 | | |
| 115.00 | | Municipal lien search: PropLogix | | |
| 90.00 | | Abstract/Title Search: First American Title Insurance Company | | |
| | | | | |
| | | Commission | | |
| 8,462.50 | | Listing Broker Gross Commission: Re/Max Infinity | | |
| 5,687.50 | | Selling Broker Gross Commission: ERA Legacy Realty | | |
| | | | | |
| | | Government Recording and Transfer Charges | | |
| | | Mortgage Recording Fee: Clerk of Courts | 171.50 | |
| | | Deed Recording Fee: Clerk of Courts | 27.00 | |
| | | Doc Stamps (B): Clerk of Courts | 777.00 | |
| 1,942.50 | | Doc Stamps (S): Clerk of Courts | | |

Copyright 2015 American Land Title Association.
All rights reserved.

18-372

Printed on 07/27/2018 at   11:21 AM

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | Intangible: Clerk of Courts | 444.00 | |
| 50.00 | | record trust affs and death certs: Clerk of Courts | | |
| | | | | |
| | | Payoff(s) | | |
| | | Lender: Compass Bank | | |
| | | Discharge of Mortgage                33,905.47 | | |
| | | Interest Per Diem From  7/27/2018 To  8/22/2018, 27 Days,        @ 3.6600                98.82 | | |
| 34,004.29 | | Total Loan Payoff | | |
| | | | | |
| | | Miscellaneous | | |
| | | Survey: Northwest Florida Land Surveying, Inc. | 450.00 | |
| 35.00 | | Release Fee: PropLogix | | |
| 50.00 | | Statement Fee: Realty Masters of Florida | | |
| 350.00 | | Association Dues-2018: Woodbine Springs Plantation HOA | | |
| Seller | | | Borrower/Buyer | |
| Debit | Credit | | Debit | Credit |
| 55,312.37 | 277,626.57 | Subtotals | 280,879.82 | 225,793.08 |
| | | Due From Borrower | | 55,086.74 |
| 222,314.20 | | Due To Seller | | |
| 277,626.57 | 277,626.57 | Totals | 280,879.82 | 280,879.82 |

Copyright 2015 American Land Title Association.
All rights reserved.

Page    3 of 4

Printed on 07/27/2018 at    11:21 AM

18-372

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement.  We/I authorize the Locklin, Saba, Locklin & Jones, PA to cause the funds to be disbursed in accordance with this statement.

the Barbara F. Godwin Trust dated September 28, 2007                    Cliff Noel Thacker

_____                    _____
Ralph L. Godwin, Jr., successor trustee                    Michelle Boivin Thacker

_____
Amy Blackman, Escrow Officer

THIS IS AN ESTIMATED CLOSING STATEMENT FIGURES ARE SUBJECT TO CHANGE

Copyright 2015 American Land Title Association.
All rights reserved.                    18-372

Page    4 of 4                    Printed on 07/27/2018 at    11:21 AM